Writ granted.

(38 Misc. Rep. 223.)

## In re PFARR'S ESTATE.

(Surrogate's Court, Kings County. June, 1902.)

ADMINISTRATION—RIGHT OF ILLEGITIMATE.

Where a woman having a living child marries a man who is not the child's father, the child has no right to administer on the man's estate upon his death intestate, and that right passes to his next of kin.

Application to revoke letters of administration issued to Louis Pfarr. Letters revoked.

August P. Wagener, for petitioners.

John C. Kinkel (Roswell H. Carpenter, of counsel), for Louis Pfarr, administrator.

CHURCH, S. This is an application to revoke letters of administration issued to Louis Pfarr, who claimed to be a son of the deceased; it being contended that the said Louis Pfarr is an illegitimate child, and not a son of the deceased, and that therefore the petitioners, who would under such circumstances be the next of kin of the deceased, are entitled to the letters of administration. It appears that the said Louis Pfarr was an infant of about six years of age when his mother, who was unmarried, came to this country with him, and a few weeks thereafter she intermarried with the deceased. Since the provisions of chapter 272 of the Laws of 1896, if the deceased, Joseph Pfarr, was the father of the said infant, Louis Pfarr, his subsequent marriage would have legitimatized the child, even although it had been born out of wedlock, and consequently the letters would have been properly issued; but it will be observed that that statute distinctly provided that it must be "the parents of the illegitimate child" who should marry in order to legitimatize the child. Therefore, if a woman has an illegitimate child, her subsequent marriage to a person who is not the father of the child does not legitimatize the child, nor give him any rights in the property and estate of the man whom his mother has married. When Caroline Weber came to this country, bringing with her the child, Louis, she was pregnant by Joseph Pfarr. Subsequent to her coming they resided together for a period of time, and subsequently married.

Four other children were born to said Caroline Weber and Joseph Pfarr subsequent to said marriage, but they have all died. It appears by the testimony of Mrs. Emnie Pfarr that before the marriage between Caroline Weber and Joseph Pfarr a conversation was held, in which said Caroline Weber admitted that the said boy, Louis, was not the child of the said Joseph Pfarr, deceased. Another witness remembers the day that Caroline Weber arrived in this country, and stated that the boy came as Louis Weber. She stated that it seemed to be understood that Joseph Pfarr was not his father. In addition, she states that the administrator herein had stated that Joseph Pfarr was not his father, and that his name was Louis Weber. It is also shown that the deceased had several times stated that he had a great deal of trouble; that he had buried his wife and four children. It appears that for 18 years last past the administrator had not gone near Joseph Pfarr, but had resided in New York City. Another witness testified that the deceased, a short time before he died, stated that he had a boy who was not his son, but who went by his name. As opposed to this there is, first, the testimony of the administrator, who is naturally an interested witness. He conceded the fact that he had not for years been to see Joseph Pfarr, who he pretended was his father. On cross-examination he was asked if he had been admitted to Bellevue Hospital under the name of Louis Weber. His replies to questions upon this matter were evasive and contradictory, and his memory was, to say the least, deficient, and certainly was such as to arouse some suspicion. He did not pretend to contradict the testimony of the witness who testified that he had stated that the deceased was not his father. The other witness produced by the administrator was Jacob Weber, a brother of his mother, Caroline Weber. The testimony of this witness tends to prove that the deceased had admitted in the presence of the witness Caroline Weber and the witness' mother that he was the father of the boy, Louis Weber. It appears, however, that this conversation took place over 35 years ago, at a time when this witness was a boy between 7 and 8 years of age. It is highly improbable to my mind that any conversation of the character which this witness narrates would have been held between the mother of Caroline Weber, Caroline Weber, and the deceased, Joseph Pfarr, in the presence of a child of this age, and also that, if any such conversation had been held in his presence, he would at that time have been able to comprehend the effect of the same, so as to recollect it at the present time. He also says that he remembers that Caroline Weber and Joseph Pfarr were living together, but that they did not live as husband and wife. The only other testimony of any importance is that Joseph Pfarr had referred to Louis as his son or his boy. It seems to be admitted by all of the witnesses that the deceased, in referring to the administrator herein, would refer to him as "his boy, Louis," or "his Louis." This fact seems to me as natural and probable, and yet not establishing the paternity of the child, as, while the deceased might be willing to marry a woman who had a bastard child, yet it is extremely unlikely that he would want to be continually advertising that fact to the

world, or referring to it in the presence of people continually; and it is natural, therefore, that he should use expressions such as have been attributed to him. It may be urged that it is extremely improbable that the deceased would have married a woman who had borne a child of which he was not the father. While this is, no doubt, so, yet we cannot blind our eyes to the fact that it is done repeatedly, and therefore, while a circumstance to be taken under consideration, should not be regarded as controlling. On the other hand, it is natural and probable that, if a person desired to marry a woman who was the mother of an illegitimate child, at the time of or immediately before the marriage there should have been a distinct understanding that he was not under any circumstances to be regarded as the father of the child; and the testimony, therefore, of the witnesses, that Caroline Weber made this admission before the marriage is, in my judgment, extremely probable. The cases quoted by the counsel either proceed upon the conceded facts that the parties to the transaction were the parents of the child whose illegitimacy was in question, or that the presumption is that they were the parents of such child; but, as in this case I have arrived at the conclusion that Joseph Pfarr was not the father of the administrator herein, the cases in question have no application.

The disposition of this case is a most unpleasant and distasteful task, as the decision means considerably more than the amount involved in the controversy, as it compels me to decide as to the legitimacy of the present administrator. It is a melancholy illustration of the fact that the "sins of the father shall be visited upon the children," and thus that this man, Louis Pfarr, is innocently made to suffer for the misconduct of those who are dead and gone; but the court, in the disposition of a matter of this character, cannot decide according to feelings of pity or take into view the consequences, and, where there is a clear-cut proposition of fact, it is the duty to make such disposition irrespective of the consequences thereof. Let a decree be entered revoking the letters of administration heretofore issued to Louis Pfarr.

Letters of administration revoked.